1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAMEA BROUSSARD, et al., | Case No. 23-cv-03320-HSG |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND GRANTING DEFENDANT'S MOTION TO STAY** |
| v. | |
| DOLE PACKAGED FOODS, LLC, | |
| Defendant. | Re: Dkt. Nos. 24, 36 |

Pending before the Court are two motions filed by Defendant Dole Packaged Foods, LLC: a motion to dismiss and a motion to stay discovery. Dkt. Nos. 24, 36. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS IN PART and DENIES IN PART** the motion to dismiss, and **GRANTS** the motion to stay discovery.

## I.  BACKGROUND

On July 3, 2023, Shamea Broussard and Michael Schirano ("Plaintiffs") brought a consumer class action complaint against Dole Packaged Foods, LLC ("Defendant" or "Dole") concerning their labeling of various fruit parfaits, gels, and juice products. *See generally* Dkt. No. 1 ("Compl."). The products at issue include (a) Fruit Bowls in Gel, (b) Fruit Bowl Parfaits, (c) Fruit Bowls in Juice, (d) Fridge Packs, (e) Canned Fruit in Heavy Syrup, (f) Canned Fruit in Light Syrup, (g) Canned Juices, and (h) "Fruitify" Beverages (collectively, the "Products"). Compl. ¶ 13. Though the labels of the Products vary, Plaintiffs challenge as misleading four statements that appear in different combinations on the Products' labels:

(1) "It's our promise to provide everyone, everywhere with good nutrition!;

(2) "Dole Fruit Bowls® seal in goodness and nutrition.";

1      (3) "Vitamin C is an antioxidant that helps support a healthy immune system.";

2      (4) "Vitamin C to support a healthy immune system."

3   (collectively, the "Representations").  For example, the labels for one of the Products – Diced

4   Peaches in Strawberry Flavored Gel – are reproduced below from Plaintiffs' complaint, where

5   three of the challenged Representations appear.



23   Compl. ¶ 27 (emphasis in original); *see also* Dkt. No. 24-2 at 2 (without annotation).  Plaintiffs

24   allege that the Representations are designed to convince consumers that the Products are healthy,

25   but that this impression is false and misleading because the Products derive at least 29% and up to

26   96% of their calories from sugar (either added or "free" sugar, which is processed sugar that is

27   "not encased in the food matrix" of the food from which it is derived, and which Plaintiffs argue

28   "act in a physiologically identical manner to added sugars," Compl. ¶ 43–53).  Compl. ¶ 2.  This,

2

they allege, is an amount that is allegedly "toxic" to the human body, definitionally not healthy, and far above the maximum amount recommended for consumption by "authoritative" medical bodies. Compl. ¶¶ 3, 94–102. Plaintiffs allege, with citations to medical journals and websites, that consumption of free or added sugar ("FA sugar") is associated with increased risk of a variety of maladies. Compl. ¶¶ 55–92. Even though the Representations are positioned near the Products' nutrition labels, Plaintiffs allege that the nutrition label is "an inadequate tool for helping people to plan diets," partially because "it provides no information on the level of processing of a food or how that processing affects the healthfulness of the food." Compl. ¶¶ 137, 136. As a result, consumers purportedly lack the information they need to correct the impression generated by the Representations (i.e. that the Products are beneficial to health).

Plaintiffs bring ten causes of action against Defendant. On behalf of the putative nationwide class and California subclass, Plaintiffs allege violations of the Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200 et seq.), the False Advertising Law ("FAL") (Cal. Bus. & Prof. Code §§ 17500 et seq.), the Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750 et seq.), as well breaches of express and implied warranties (Cal. Com. Code §§ 2313(1), 2314). Compl. ¶¶ 175–207. On behalf of the New York subclass, Plaintiffs allege that Defendant's conduct constitutes an unfair and deceptive business practice (in violation of N.Y. Gen. Bus. L. § 349) and false advertising (in violation N.Y. Gen. Bus. L. § 350). *Id*. ¶¶ 220–232. And finally, on behalf of the nationwide class and the two state subclasses, Plaintiffs assert unjust enrichment, negligent misrepresentation, and intentional misrepresentation claims. *Id*. ¶¶ 233–253.

On September 12, 2023, Defendant filed a motion to dismiss Plaintiffs' class action complaint in its entirety. Dkt. No. 24 ("Mot."). The matter is now fully briefed. Dkt. Nos. 26 ("Opp"), 27 ("Reply"). On January 11, 2024, Defendant filed a motion to stay discovery, Dkt. No. 36, which is also ready for disposition. Dkt. No. 37, 39.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A

United States District Court
Northern District of California

1  defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

2  granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the

3  complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

4  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule

5  12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible

6  on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible

7  when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

8  the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

9      Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a

10  claim.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity

11  the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317

12  F.3d 1097, 1107 (9th Cir. 2003).  A plaintiff must identify "the who, what, when, where, and how"

13  of the alleged conduct, so as to provide defendants with sufficient information to defend against

14  the charge.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  However, "[m]alice, intent,

15  knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P.

16  Rule 9(b).

17      In reviewing the plausibility of a complaint, courts "accept factual allegations in the

18  complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

19  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless,

20  courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

21  fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

22  2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

23      Even if the court concludes that a 12(b)(6) motion should be granted, the "court should

24  grant leave to amend even if no request to amend the pleading was made, unless it determines that

25  the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203

26  F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

27  //

28  //

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.     MOTION TO DISMISS

#### A.     Request for Judicial Notice

Defendant moves the Court to take judicial notice of various materials, including (1) the labels for 13 of the Products (Dkt. No. 24-2), (2) dictionary definitions of "nourishment" (Mot. at 25 n.10) and "nutrition" (Mot. at 27 n.13), (3) contents from the Federal Register (Mot. at 18–22), and (4) regulatory guidance from the FDA's website (Mot. at 18–20).[1]  Dkt. No. 24-3.  The Court will **GRANT** Defendant's requests, which are all unopposed.

#### i.     Legal Standard

In *Khoja v. Orexigen Therapeutics*, the Ninth Circuit clarified the judicial notice rule and incorporation by reference doctrine.  *See* 899 F.3d 988 (9th Cir. 2018).  Under Federal Rule of Evidence 201, a court may take judicial notice of a fact "not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Accordingly, a court may take "judicial notice of matters of public record," but "cannot take judicial notice of disputed facts contained in such public records."  *Khoja*, 899 F.3d at 999 (citation and quotations omitted).  The Ninth Circuit has clarified that if a court takes judicial notice of a document, it must specify what facts it judicially noticed from the document.  *Id*. at 999.  Further, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."  *Id*.  As an example, the Ninth Circuit held that for a transcript of a conference call, the court may take judicial notice of the fact that there was a conference call on the specified date, but may not take judicial notice of a fact mentioned in the transcript, because the substance "is subject to varying interpretations, and there is a reasonable dispute as to what the [document] establishes."  *Id*. at 999–1000.

Separately, the incorporation by reference doctrine is a judicially created doctrine that allows a court to consider certain documents as though they were part of the complaint itself.  *Id*. at 1002.  This is to prevent plaintiffs from cherry-picking certain portions of documents that

---

[1] For ease of reference, the Court refers to the PDF pages rather than the document's internal pagination unless otherwise noted.

United States District Court
Northern District of California

1  support their claims, while omitting portions that weaken their claims. *Id.* Incorporation by

2  reference is appropriate "if the plaintiff refers extensively to the document or the document forms

3  the basis of plaintiff's claim." *Khoja*, 899 F.3d at 1002. However, "the mere mention of the

4  existence of a document is insufficient to incorporate the contents" of a document. *Id.* at 1002.

5  And while a court "may assume [an incorporated document's] contents are true for purposes of a

6  motion to dismiss … it is improper to assume the truth of an incorporated document if such

7  assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.*

8          **ii.    Analysis**

9          The Court finds that it can properly consider the labels of the Products (Dkt. No. 24-2,

10  Exhibits 1-8) under the incorporation by reference doctrine, since "[P]laintiff[s] refer[] extensively

11  to the [labels]" in their complaint and "the [labels] form[] the basis of [P]laintiff[s'] claim."

12  *Khoja*, 899 F.3d at 1002. *See also Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1087 (N.D.

13  Cal. 2017) ("[C]ourts addressing motions to dismiss product-labeling claims routinely take

14  judicial notice of images of the product packaging.") (internal quotations omitted)). The Court

15  also finds judicial notice of the two dictionary definitions, Federal Register excerpts, and FDA

16  materials appropriate, since all of those materials are "not subject to reasonable dispute" and "can

17  be accurately and readily determined from sources whose accuracy cannot reasonably be

18  questioned." Fed. R. Evid. 201(b)(2); *see also Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d

19  1225, 1229 (9th Cir. 2019) (consulting dictionary definitions); *Paralyzed Veterans of Am. v.*

20  *McPherson*, No. C064670SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008) (taking judicial

21  notice of "information on government agency websites, which have often been treated as proper

22  subjects for judicial notice"). Accordingly, Defendant's request is **GRANTED.** Dkt. No. 24-3.

23          **A.    Standing**

24          Defendant argues that Plaintiffs lack both statutory standing for their consumer protection

25  claims and Article III standing for their injunctive relief claims. Mot. at 31–32. The Court agrees

26  with Plaintiffs that they have adequately pled statutory standing under consumer protection

27  statutes, but determines that they have not sufficiently pled an entitlement to injunctive relief

28  under Article III.

i.     **Statutory Standing**

Defendant contends that Plaintiffs lack standing to pursue their California UCL, FAL, and CLRA claims, as well as their New York GBL claim, because they fail to properly allege economic injury.  *See* Mot. at 22-23.  The Court finds that Plaintiffs have pled sufficient facts at this juncture.

To have standing under the UCL or FAL, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (emphasis in original).  In other words, "[a] consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of [the UCL and FAL] by alleging . . . that he or she would not have bought the product but for the misrepresentation."  *Id*.  The CLRA requires that a person suffered "damages as the result of" a violation of the statute in order to have standing, but does not require a showing of economic loss specifically.  Cal. Civ. Code § 1780(a).  And to establish standing under the GBL, a plaintiff must "allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase."  *Duchnik v. Tops Markets, LLC*, No. 22CV399JLSHKS, 2023 WL 4827951, at *6 (W.D.N.Y. July 6, 2023), *report and recommendation adopted*, No. 22CV399JLSHKS, 2023 WL 4828141 (W.D.N.Y. July 26, 2023) (collecting cases).

To have standing under all of these statutes, then, Plaintiffs must allege economic injury and reliance.  Here, Plaintiffs allege that they were "exposed to, read, and relied on" the challenged label statements, and identify the label statements on which they relied.  Compl. ¶¶ 150, 152.  They further allege that they "would not have purchased the Products if they knew that the challenged labeling claims [on which they relied] were false and misleading" and "would only have been willing to pay less, or unwilling to purchase them at all, absent the false and misleading labeling" about which they complain.  *Id*. ¶¶ 155, 158.  Plaintiffs also allege that the "Products cost more than similar products without misleading labeling and would have cost less absent Dole's false and misleading statements and omissions."  Compl. ¶ 156.  Consistent with

1   controlling law, these allegations are sufficient to establish standing under the relevant statues

2   given that Plaintiffs aver they overpaid (i.e. were economically injured) in reliance on Defendant's

3   challenged labeling. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018)

4   ("[A] consumer's allegation that 'she would not have bought the product but for the

5   misrepresentation . . . is sufficient to allege causation . . . [and] to allege economic injury.'")

6   (omissions in the original).

7        Though Defendant casts Plaintiffs' allegations as "conclusory" and urges the Court to

8   effectively apply a heightened standard in assessing them, no binding authority supports that

9   approach.  For example, Defendant challenges Plaintiffs' allegation that they paid a price premium

10  for the Products on the grounds that they failed to allege the "amount of the alleged premium or

11  the identity and pricing of non-premium products."  Mot. at 32.  But *Davidson* instructs that to

12  properly plead economic injury, a consumer must only allege that "she was exposed to false

13  information about the product purchased, which caused the product to be sold at a higher price,

14  and that she 'would not have purchased the goods in question absent this misrepresentation.'"

15  *Davidson*, 889 F.3d at 966 (internal citations omitted).  Plaintiffs have done so: they plausibly

16  allege that they were exposed to labels that supposedly touted the healthiness of the Products in a

17  misleading manner, and that the perceived healthiness of the Products allowed Defendant to sell

18  them at a higher price (because consumers are allegedly willing to pay more for healthy foods),

19  and that Plaintiffs would not have purchased the Products or would have paid less for them absent

20  the misleading branding. At this stage, it is enough that Plaintiffs allege a plausible theory for the

21  premium (i.e. the label's allegedly misleading invocation of healthiness), and causally connect that

22  misleading labeling to their purchase.  *See Ary v. Target Corp.*, No. 22-CV-02625-HSG, 2023 WL

23  2622142, at *4 (N.D. Cal. Mar. 23, 2023); *Takahashi-Mendoza v. Coop. Regions of Organic*

24  *Producer Pools*, 673 F. Supp. 3d 1083, 1093–94 (N.D. Cal. 2023).

25       Accordingly, the Court finds that Plaintiffs have statutory standing under the UCL, FAL,

26  CLRA and GBL to pursue their claims, and **DENIES** Defendant's motion to dismiss on this basis.

27  //

28  //

United States District Court
Northern District of California

8

1          ii.    **Article III Standing**

2          Defendant also argues that Plaintiffs lack standing to seek injunctive relief.  On this point,

3    the Court agrees.

4          To have standing to seek injunctive relief under Article III, a plaintiff must "demonstrate a

5    real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*,

6    631 F.3d 939, 946 (9th Cir. 2011) (internal quotation omitted).  Wronged plaintiffs are entitled to

7    injunctive relief only if they can show that they face a "'real or immediate threat . . . that [they]

8    will again be wronged in a similar way.'"  *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir.

9    2010) (omission in original) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  In

10   the context of false advertising cases, the Ninth Circuit has confirmed that "a previously deceived

11   consumer may have standing to seek an injunction against false advertising or labeling, even

12   though the consumer now knows or suspects that the advertising was false at the time of the

13   original purchase[.]" *Davidson*, 889 F.3d at, 969.  *Davidson* identifies two ways a plaintiff may

14   establish the required risk of future harm: (1) "the consumer's plausible allegations that [they] will

15   be unable to rely on the product's advertising or labeling in the future, and so will not purchase the

16   product although [they] would like to"; or (2) "the consumer's plausible allegations that [they]

17   might purchase the product in the future, despite the fact it was once marred by false advertising or

18   labeling, as [they] may reasonably, but incorrectly, assume the product was improved." *Id*. at

19   969–70.

20         Here, Plaintiffs allege that they "still wish to purchase healthy packaged fruits and juices

21   with nutritional benefits and continue to see the Products at stores when they shop," and "would

22   purchase the Products in the future if the Products were as represented, but unless Dole is enjoined

23   . . . *may* not be able to rely on Dole's health and wellness claims in the future."  Compl. ¶ 163

24   (emphasis added).  Plaintiffs' allegations do not squarely satisfy *Davidson*: Plaintiffs do not allege

25   that they will *not* purchase the product in the future because they *cannot* rely on the

26   representations, and they do not allege that they might purchase the Products in the future

27   assuming – reasonably, but incorrectly – that the product was improved.  Where Plaintiffs allege

28   only that they "may" be unable to rely on Product's label representations in the future, the threat of

United States District Court
Northern District of California

1    repeated injury does not appear "real and immediate."  Plaintiffs try to rehabilitate the allegations

2    in their Opposition by suggesting that they face a threat of injury because the Products could be

3    reformulated (by, for example, processing raw fruit differently) to mitigate the presence of FA

4    sugar and make the labels truthful without Plaintiffs being able to discern "whether the products

5    have been reformulated or Dole is just continuing to misrepresent them."  Opp. at 30.  However,

6    that allegation (which seems to invoke *Davidson's* second scenario) did not appear in the

7    Complaint, and regardless, Plaintiffs do not explain how they would have trouble discerning the

8    presence or absence of FA sugar in the Products in the future where they plead elsewhere that

9    "[f]ree sugar excludes only sugars naturally occurring in *intact* fruits, vegetables, or dairy

10   products."  Compl. ¶ 44 (emphasis in original).  To the extent the Products continue consisting of

11   anything other than just intact fruit, the Court is skeptical of the notion that Plaintiffs could

12   "reasonably, but incorrectly" assume improvement of the Products.

13           Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' claims for

14   injunctive relief.[2]

15       **B.    Preemption**

16           Defendant argues that Plaintiffs' claims based on two of the Representations are

17   preempted, namely those that characterize the effect of vitamin C on the immune system:

18           1.   "Excellent source of antioxidant vitamin C to support a healthy immune system."[3]

19                ("Fruitify statement")

20           2.   "Vitamin C is an antioxidant that helps support a healthy immune system."

21                ("Antioxidant Statement")

22   _____

23   [2] Nevertheless, the Court will analyze Plaintiff's substantive claims even where they seek
     injunctive relief below, for the sake of completeness.
24   [3] This Representation – which appears on the back label of the Fruitify product only, *see* Compl. ¶
     41 – is distinct from the front-label claim on six of the Products that characterizes them as an
25   "Excellent Source" or "Good Source" of Vitamin C.  *See* Compl. ¶¶ 27, 29, 31, 35, 37, 39.  While
     Plaintiffs challenge the representation on the Fruitify back label, they do not challenge the front-
26   label "Excellent Source" and "Good Source" claims on the other Products.  Defendant appears not
     to appreciate this distinction, and makes arguments regarding the preemption of the front-label
27   claim.  *See* Reply at 7 ("As a result, their challenge to the statement on the labels of the Fruit
     Bowl®, canned fruit, and canned juice Products is preempted.").  Since Plaintiffs do not challenge
28   the front-label "Excellent Source" and "Good Source" claims, the Court need not evaluate whether
     they are preempted.

1   Mot. at 16. They also argue that since Plaintiffs "seek to impose a duty to disclose the alleged

2   dangers of naturally occurring or added sugar," their omissions claims are likewise barred.

3       For the reasons described below, the Court agrees with Defendant that the Fruitify

4   statement and Antioxidant Statement are preempted and cannot serve as a basis for Plaintiffs'

5   other claims. However, it finds that Plaintiffs' omission-based claims are not preempted.

6          **i.   Background**

7       The Food, Drug, and Cosmetic Act ("FDCA") sets out the standards that foods and their

8   labels must meet to avoid being deemed misbranded. *Chacanaca v. Quaker Oats Co.*, 752 F.

9   Supp. 2d 1111, 1116 (N.D. Cal. 2010). Some of these standards were established through

10   amendment by the Nutrition Labeling and Education Act of 1990 ("NLEA"), which, among other

11   things, also added a preemption clause prohibiting states from imposing labeling requirements that

12   differ from certain of those contained in the FDCA. *See* 21 C.F.R. § 343-1(a)(3) ("[N]o State . . .

13   may directly or indirectly establish . . . any requirement for the labeling of food . . . that is not

14   identical to" the FDCA's requirements). Under this provision, courts have found labeling claims

15   barred where plaintiffs seek a court order imposing labeling requirements that differ from or layer

16   onto the FDCA's requirements. *See, e.g.*, *Greenberg v. Target Corp.*, 985 F.3d 650, 655 (9th Cir.

17   2021) ("Thus, if the defendants' biotin statement meets the FDCA's three requirements for a

18   structure/function claim, then any state law claims challenging that claim fall to the wayside.");

19   *see also Chacanaca*, 752 F. Supp. 2d at 1119.

20       Section 343(r) of the FDCA "governs all *voluntary* statements about nutrient content or

21   health information a manufacturer chooses to include on a food label or packaging." *Chacanaca*,

22   752 F. Supp. 2d at 1117. In particular, Section 343(r) covers food labeling claims that "expressly

23   or by implication" "characterize[] the level of any nutrient *or* "characterize[] the relationship of

24   any nutrient . . . to a disease or a health-related condition." 21 U.S.C. § 343(r)(1)(A)-(B). The

25   FDA has promulgated regulations that categorize and govern the two types of claims covered by

26   Section 343(r) into nutrient content claims (both implied and express) as well as health claims.

27   *See* 21 C.F.R. §§ 101.13 (nutrient content claims), 101.14 (health claims).

28   //

United States District Court
Northern District of California

United States District Court
Northern District of California

ii.     **Representations**

At issue in this case are whether the Fruitify Statement and Antioxidant Statement are nutrient content claims, and whether Plaintiffs' claims premised upon them are consequently preempted.

a.   Fruitify Statement

While they frame the analysis somewhat differently, the parties appear to agree that the Fruitify statement is an implied nutrient content claim. *See* Mot. at 17; Opp. at 14 ("By contrast, the statement Plaintiffs challenge on Fruitify Beverages –'Vitamin C to support a healthy immune system' – is made 'in connection with an . . . implicit claim or statement about a nutrient' under § 101.13(b)(2)(ii)."). That notwithstanding, Plaintiffs argue that the statement is not preempted because Defendant improperly fortified the Product in violation of 21 C.F.R. § 101.65(d)(2)(iv), rendering it misbranded. Opp. at 14. But, as Defendant points out, Plaintiffs do not plead improper fortification of Fruitify Products. *See* Compl. ¶¶ 111-13 (alleging improper fortification of Dole's Fruit Bowl Parfaits, Fruit Bowls in Gel, Canned Tropical Fruit in Light Syrup and Passion Fruit Juice, and Canned Pineapple Juice only). On the current allegations, then, the Court finds the Fruitify Statement a preempted implied nutrient content claim, and **GRANTS** Defendant's motion to dismiss Plaintiffs' claims arising from this statement.

b.   Antioxidant Statement

The parties disagree about whether the back-label Antioxidant Statement ("Vitamin C is an antioxidant that helps support a healthy immune system") is a nutrient content claim. Under 21 C.F.R. § 101.13(b), a nutrient content claim "expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling." An express nutrient content claim makes a direct statement about the "level (or range) of a nutrient in a food." Since the Antioxidant Statement does not expressly characterize the "level (or range)" of vitamin C in the products, it is not an express nutrient content claim.

The question is therefore whether it is an implied nutrient content claim. The Court finds it is. An implied nutrient content claim is one that "[d]escribes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount" *or* "[s]uggests that

1    the food, because of its nutrient content, may be useful in maintaining healthy dietary practices

2    and is made in association with an explicit claim or statement about a nutrient." 21 C.F.R. §

3    101.13(b)(2)(i)–(ii). The Antioxidant Statement does not, as Defendant contends, satisfy the first

4    definition because it does not "characterize[] the level of Vitamin C" in the applicable Products.

5    Mot. at 17. Instead, it simply describes the role that vitamin C plays in the body without stating or

6    implying that it is "absent or present *in a certain amount*." 21 C.F.R. § 101.13(b)(2)(i) (emphasis

7    added). However, the Court must consider whether the Antioxidant Statement meets the second

8    definition by "[s]uggest[ing] that the food, because of its nutrient content, may be useful in

9    maintaining healthy dietary practices and [are] made in association with an explicit claim or

10   statement about a nutrient." 21 C.F.R. § 101.13(b)(2)(i)(ii). The regulations provide an example

11   of such a statement: "Healthy, contains 3 grams (g) of fat." In this example, "Healthy" is the

12   implied nutrient content claim made in association with the explicit statement "contains 3 grams

13   (g) of fat."

14        The key inquiry in this case is whether the challenged statement is made "*in association*

15   with an explicit claim or statement about a nutrient." *Id*. While it only addresses it in passing,

16   Defendant argues that this requirement is satisfied because "[w]henever a Product highlights the

17   presence of Vitamin C with the Antioxidant Statement – which appears on the back or side panel

18   of the Product – the Product simultaneously states that the Product is an 'excellent source' or

19   'good source' of Vitamin C on the front panel." Mot. at 17. In other words, Defendant "argues

20   this latter, unchallenged statement renders the former, challenged statement a permitted implied

21   nutrient content claim." Opp. at 13.

22        While a close question, the Court finds that the Antioxidant Statement is made "in

23   association with" the front-label "excellent source" and "good source" claims. While Plaintiffs

24   argue that the statements are not in close enough proximity to be clearly associated, "the 'magic

25   words' that might create an implied nutrient claim do not need to be directly adjacent to the

26   discussion of a nutrient to create an implied nutrient content claim . . . ." *See LeGrand v. Abbott

27   Lab'ys*, 655 F. Supp. 3d 871, 888 (N.D. Cal. 2023) (internal quotations omitted). Instead, the

28   statements must be connected "given the words, their placement, and their context." *Id*.

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1    Here, the words and the context of the label convince the Court that the statements are

2  adequately associated, their placement notwithstanding.  First, the wording of the Antioxidant

3  Statement and the front-label "excellent" or "good source" statements clearly indicate a shared

4  subject matter – the nutrient vitamin C – that linguistically tethers the statements to one another.

5  This is not always the case.  For example, in each of the implied content claims discussed in an

6  FDA pamphlet from 2008 – such as "Nutritious, contains 3 grams of fiber," "Best choice, contains

7  200 mg sodium," and "Good for you, contains 5 grams of fat" – there is nothing that clearly

8  tethers the subject manner of the implied content claim (i.e. the clause before the comma) to the

9  explicit statement about a nutrient (i.e. the clause after the comma) *other than* their adjacent

10  placement.  *See* Guidance For Industry: A Labeling Guide For Restaurants and Other Retail

11  Establishments Selling Away-from-home Foods, 2008 WL 2155726, at *10.  Take as an example

12  the implied content claim "Nutritious, contains 3 grams of fiber."  But for the adjacent placement

13  of "contains 3 grams of fiber" directly next to "Nutritious," it would be ambiguous what nutrient –

14  whether fiber or something else – was associated with the nonspecific "Nutritious" claim.  But in

15  this case, the explicit invocation of vitamin C in both statements ties them together even though

16  they are not directly next to each other.  This clearly distinguishes these labels from the one in

17  Plaintiffs' cited authority, *Krommenhock v. Post Foods, LLC*, where the court determined that the

18  term "healthy" on cereal packaging was not an implied nutrient claim because it was not

19  "combined with direct references to a governed nutrient" – such as sodium or fat or cholesterol.

20  No. 16-CV-04958-WHO, 2018 WL 1335867, at *5 (N.D. Cal. Mar. 15, 2018) [*"Krommenhock*

21  *II"*].  Since the statements at issue here both independently and directly mention vitamin C, there

22  is no ambiguity about the governed nutrient.

23    Second, the Court finds the context of the label significant.  While many cases deal with

24  challenges to front label claims that lack a clear connection to the finer print on the back label, this

25  case involves the opposite circumstance.  For example, in *LeGrand*, the court found that the front

26  label reference to "'Immune * Muscle * Heart * Digestion * Bone' on the front of the packaging"

27  was not an implied nutrient content claim even though "back of the packaging follows these words

28  with specific nutrient content," since "the front of packaging include[d] no such language" and the

claims there were "separate from other references to nutrient content on the packaging." 655 F. Supp. 3d at 888–89. Here, there is a clear claim regarding vitamin C on the front of the label, which provides a nutritional context for the Antioxidant Statement appearing on the side or back of the label – a context further reinforced by the positioning of the Antioxidant Statement directly adjacent to or close to the nutrition facts panel. Ultimately, the Court finds this case analogous to *Hadley v. Kellogg Sales Co.*, which also involved a descriptive back label statement about fiber – "FIBER: Fiber, like bran fiber, plays a very important part in your digestive health and overall well-being" – that Kellogg successfully argued was associated with the front label "Excellent Source of Fiber" claim.[4] 273 F. Supp. 3d 1052, 1077 (N.D. Cal. 2017). The court there concluded that "although the [fiber] statement does not claim that Defendant's products are 'high' in fiber explicitly, the context and other statements on the box imply that the product contains fiber and is healthier as a result." *Id*. The same conclusion is warranted here.

That is, however, not the end of the analytical road. Plaintiffs argue that even if the Antioxidant Statement qualifies as an implied nutrient content claim, the claims challenging that statement are nevertheless not preempted because the products bearing the Antioxidant Statement are misbranded. The misbranding, they reason, arises out of the fact that the Products are fortified in a manner that fails to comply 21 C.F.R. § 104.20, which establishes a "set of principles that will serve as a model for the rational addition of nutrients to foods." Defendant argues that it is not subject to the fortification policy at Section 104.20, and that in any event, it has a rational basis for adding vitamin C – namely, "to promote color retention." Mot. at 18.

While Plaintiffs disagree that the Antioxidant Statement is an implied nutrient content claim, they argue that to the extent these statements are construed as such, Defendant must abide by the fortification policy because the Antioxidant Statement uses the word "healthy." Opp. at 15. According to Plaintiffs, this obligation arises out of 21 C.F.R. § 101.65, which governs implied

---

[4] Plaintiffs argue that *Hadley* is "inapplicable" because it dealt with an implied nutrient claim under paragraph (d) of 21 C.F.R. § 101.65 rather than (c). Opp. at 14. But they provide no support for the notion that the analysis of claims under the two paragraphs differs, and themselves go on to argue that the Antioxidant Statement must meet the requirements of (d) since it uses the term "healthy." *Id*. Given this, the Court does not find Plaintiffs' argument persuasive.

United States District Court
Northern District of California

nutrient content claims and related label statements.  Subsection 101.65(d)(2) conditions the use of "healthy" (and related terms) as an implied nutrient content claim on four requirements, including one bearing on fortification.  Specifically, Subsection 101.65(d)(2)(iv) requires that to the extent that certain nutrients (including vitamin C) are added to foods (whether specifically listed at Section 101.65(d)(2)(i) or not) "*to meet the 10 percent requirement*, that addition must be in accordance with the fortification policy for foods in § 104.20 of this chapter."

For purposes of assessing this argument, the Court will assume that the usage of the term "healthy" in the Antioxidant Statement triggers an obligation to comply with the requirements at Section 101.65(d)(2)(i)-(iv), including the requirement to adhere to the fortification policy in instances where nutrients are added to a food *to meet the 10 percent requirement* detailed in the regulation.  *See* 101.65(d)(2)(iv).[5]  Though Plaintiffs generally allege in their complaint that Defendant *violated* the fortification policy, they do not adequately allege that Defendant was subject to it.  In particular, they do not allege that Defendant added vitamin C to the Products *in order* to meet the minimum level (i.e. 10% of the reference daily intake) of vitamin C required in foods labeled with "healthy" implied nutrient content claims.  Given the high levels of vitamin C that naturally occur in the Products, the Court cannot simply assume as a matter of common sense that *added* (as opposed to naturally occurring) vitamin C caused them to meet the 10% threshold. In other words, without any allegation connecting the added vitamin C to the ten percent requirement, the Court cannot conclude that Defendant was subject to the fortification policy by

---

[5] That said, the Court questions the premise of Plaintiffs' argument, which is that the Antioxidant Statement is a "healthy" implied nutrient content claim.  While the Antioxidant Statement indisputably uses the word "healthy" in reference to the immune system, "healthy" is not itself the implied nutrient content claim: the implied nutrient content claim is "Vitamin C is an antioxidant that helps support a healthy immune system."  The difference between the two usages is not just semantic, as there is a substantive distinction as well.  When used as a standalone implied nutrient content claim, "healthy" characterizes the benefits of the food, as opposed to – like here – characterizing the positive effect of the food on the body.  The regulations applicable to foods bearing "healthy" implied nutrient content claims (which are organized by food type and dictate the permissible constituent amounts of fat, cholesterol, sodium, and other nutrients in the food) strongly suggest that their focus is on gatekeeping what foods may be called "healthy," as opposed to what bodily functions may be identified as positively impacted by a given food.  As such, it is not obvious to the Court that Defendant must even comply with the requirements of Section 101.65(d)(2)(i)-(iv), but since neither party raised the argument, the Court proceeds analytically from the same starting place as the parties.  However, in any amended complaint and future rounds of briefing, the parties should squarely address this issue.

16

1    operation of Section 101.65(d)(2)(iv).  While the Court agrees with Plaintiffs that were it subject

2    to the policy, Defendant would bear the burden of demonstrating that it fortified the Products

3    within the parameters specified by Section 104.20, it was Plaintiffs' duty in the first instance to

4    adequately plead that the provision both applies and was violated.

5           The Court therefore concludes that in the absence of a well-pled violation of the

6    fortification (or other) policy, the Antioxidant Statement is a preempted implied content claim.  It

7    accordingly **GRANTS** Defendant's motion to dismiss on this ground, and finds Plaintiffs' claims

8    that rely on Defendant's use of this statement preempted. [6]

9                    **iii.    Omissions Claims Based on Sugar Content**

10          Defendant argues that since "the FDA does not require that products containing naturally

11   occurring or added sugar" bear a warning, Plaintiffs' claim that Defendant had a "duty to disclose"

12   information about the alleged dangers of sugar consumption is preempted as a non-identical

13   requirement under the FDCA.  Mot. at 21–22.  Since the Court does not read Plaintiffs' theory as

14   seeking to impose a non-identical requirement, it declines to dismiss on this basis.

15          Though Defendant tries to suggest otherwise, Plaintiffs do not argue that Defendant *always*

16   has a duty to disclose the health effects of sugar, which would clearly be a non-identical

17   requirement under the FDCA.  Instead, Plaintiffs argue that the omission of this information is

18   actionable under California consumer protection statutes *because of* the Products' label

19   representations, which Plaintiffs argue misleadingly promote the Products as healthy.  Opp. at 18.

20   In other words, the duty to disclose the dangers of sugar to health rises and falls on the presence of

21   other, affirmative representations that misleadingly tout the healthiness of sugary Products.  While

22   Defendant argues that it cannot be required to provide such warnings because the FDA already

23   "considered, and rejected, the disclosure of the alleged health effects of added sugar," Defendant

24   has not shown that the FDA did so where, as here, there are pertinent alleged affirmative

25   misrepresentations on the label.  *See Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 955

26   (N.D. Cal. 2017) ["*Krommenhock I*"].  In that circumstance, "plaintiff's claims, if proved, 'would

27   _____

28   [6] Having so found, the Court declines to consider Defendant's alternative argument that the
     Antioxidant Statement is a structure/function claim.

United States District Court
Northern District of California

1    simply require Defendant to truthfully state'" material information, "or not sell its products; such

2    relief would not impose a state requirement that is 'different from or in addition to, or that is

3    otherwise not identical with' that of the FDCA." [7]  *See Fagan v. Neutrogena Corp.*, 2014 WL

4    92255, at *1 (C.D. Cal. Jan. 8, 2014) (quotation omitted).

5         While the Court – for the reasons described below in Section III.C – does not ultimately

6    find the alleged omission actionable, it concludes that any omission-based claims are not

7    preempted.  Accordingly, the Court **DENIES** Defendant's motion to dismiss on this basis.

8         **C.    UCL, FAL, and CLRA Claims**

9         Defendant contends that Plaintiffs' UCL, FAL, and CLRA claims fail because the

10   challenged statements are puffery, and would not deceive reasonable consumers as a matter of

11   law.  The Court agrees.

12        The parties agree that the "reasonable consumer test" governs Plaintiffs' CLRA, UCL, and

13   FAL claims.  Mot. at 25; Opp. at 20.  Under this test, a plaintiff must "show that members of the

14   public are likely to be deceived" by the challenged representations.  *See Williams v. Gerber Prods.*

15   *Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation and citation omitted).  This requires

16   more than a "mere possibility" that Dole's Product labels "might conceivably be misunderstood by

17   some few consumers viewing [the labels] in an unreasonable manner." *Becerra v. Dr*

18   *Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (quoting *Lavie v. Procter & Gamble*

19   *Co.*, 105 Cal. App. 4th 496, 508 (2003)).  Rather, it must be "probable that a significant portion of

20   the general consuming public or of targeted consumers, acting reasonably in the circumstances,

21   could be misled." *Id.*

22        Despite agreeing on the relevant standard, the parties disagree on whether Plaintiffs have

23

24   _____

     [7] Moreover, Plaintiffs have alleged that the FDA does require food manufacturers to "reveal facts
25   that are material in light of other representations made or suggested by" a product's label, and that
     are "[m]aterial with respect to the consequences which may result from use of the article under . . .
26   conditions of use as are customary or usual[.]"  Compl. ¶¶ 147-48 (quoting 21 C.F.R. §§
     1.21(a)(1) & (2)).  Defendant, who bears the burden of demonstrating preemption, has not argued
27   that its obligations under Section 1.21(a)(1) materially differ from its obligations under
     California's consumer protection statutes, such that prevailing on omissions claim under the UCL,
28   FAL, and CLRA would require Defendant to make disclosures that would not otherwise be
     required by Section 1.21(a)(1).

United States District Court
Northern District of California

1    plausibly alleged that the challenged (and non-preempted) Representations are deceptive under

2    this standard.[8]  In a nutshell, Plaintiffs' theory is that the Representations portray the Products as

3    healthy, when in fact the amount of FA sugar they contain renders them unhealthy.  Courts in this

4    district have come out different ways on the viability of this theory.  Here, however, the Court

5    finds that Plaintiffs have not plausibly alleged that the Representations mislead reasonable

6    consumers as to the healthfulness of the product.

7         First, the Court is persuaded that the statements invoking "a promise to provide everyone,

8    everywhere with good nutrition" and referencing "seal[ing] in goodness and nutrition" are puffery.

9    Puffery is "exaggerated advertising, blustering, and boasting upon which no reasonable buyer

10   would rely and is not actionable[.]"  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134,

11   1145 (9th Cir. 1997) (cleaned up).  "[T]he difference between a statement of fact and mere puffery

12   rests in the specificity or generality of the claim."  *Newcal Indus., Inc. v. IKON Office Solution*,

13   513 F.3d 1038, 1053 (9th Cir. 2008).  Therefore, "to be actionable as an affirmative

14   misrepresentation, a statement must make a specific and measurable claim, capable of being

15   proved false or of being reasonably interpreted as a statement of objective fact." *Weiss v. Trader*

16   *Joe's Co.*, 2018 WL 6340758, at *4 (C.D. Cal. Nov. 20, 2018). "Generalized, vague, and

17   unspecified" statements are routinely dismissed at the 12(b)(6) stage.  *Oestreicher v. Alienware*

18   *Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008).

19   //

20   //

21   //

22   //

23   //

24   //

25

26

27   _____

     [8] The non-preempted Representations relevant to Section III.C are:
28        (1) "It's our promise to provide everyone, everywhere with good nutrition!;
          (2) "Dole Fruit Bowls® seal in goodness and nutrition."

19

United States District Court
Northern District of California

1   Here, the Court finds that no reasonable consumer would rely on the "good nutrition" and

2   "goodness and nutrition" statements as they appear on the labels, reproduced below.



(Declaration of Sarah Brew, Ex. 2) (emphasis added in black).

If these phrases appeared in isolation, the Court might conclude differently. But each reference to the challenged phrases ("good nutrition" or "goodness and nutrition") follows advertising copy that likens the Products to sunshine – a patently fanciful analogy that is further reinforced with playful, childlike drawings of the sun. The context, in other words, clearly signals that the claims are too vague and aspirational to serve as anything other than "exaggerated advertising." *Truxel*, 2019 WL 3940956, at *2. As depicted above, the Representation that "It's our promise to provide everyone, everywhere with good nutrition!" is immediately preceded by the slogan "We believe in Sunshine for All" and adjacent to a rendering of the sun. Interpreting this sentence pairing as anything other than a statement of corporate aspiration would be unreasonable, as would a consumer's reliance on the phrase "good nutrition" in isolation. *See Krommenhock I*, 255 F. Supp. 3d at 965 ("Courts have repeatedly emphasized that in order to assess whether a statement is mere puffery, it must be considered in the context of the whole label."). The clear sales jargon backdrop distinguishes this case from those relied upon by Plaintiffs. *See, e.g.*, *Chacanaca*, 752 F. Supp. 2d at 1125–26 (holding that use of "wholesome" claim was not puffery in context lacking aspirational sales promises and imagery).

Similarly, the challenged representation on Defendant's Fruit Bowls that they "seal in goodness and nutrition" follows the claim "FULL OF SUNSHINE" and "Bring sunshine with you wherever you go." To state the obvious: the Products are not literally "full of sunshine," and no

consumer can "bring sunshine" with them "wherever" they go – whether by purchasing one of the Products or doing something else.  And the Representations' pairing of "nutrition" with the nonspecific term "goodness" further incorporates an inherently subjective element.  *See Weiss v. Kroger Co.*, 2014 WL 5114608, at *3 (C.D. Cal. Aug. 8, 2014) ("[A] whole lot of goodness contained in each and every tiny sunflower seed" was "highly subjective non-actionable puffery" and therefore did not reasonably imply the product was healthy); *Truxel*, 2019 WL 3940956, at *2 ("a world of goodness" was non-actionable puffery).  In short, the inclusion of the conceivably health-related phrases "good nutrition" and "goodness and nutrition" in these two Representations does not convert clear advertising copy into a verifiable, specific statement of fact.

Even if did, however, the Court's ultimate view would not change.  To the extent that the Representations are read literally (which, again, context dictates they should not be), they are not false because even as alleged the Products do contain "nutrition" as indicated in the nutrition panels, including vitamin C.  Plaintiffs argue that the "good nutrition" and "goodness and nutrition" Representations are nevertheless misleading because they connote that the Products are healthy overall, which – due to the amount of FA sugar – is allegedly not the case.  To be clear, the Products do not expressly invoke healthiness.  Instead, Plaintiffs' argument requires extrapolating an affirmative representation of "healthiness" from the "good nutrition" and "goodness and nutrition" Representations, and then challenging the truthfulness of the extrapolated but not actually present "healthiness" representation.

While that extrapolation may be plausible in some circumstances, this is not one of them, as the inferential leap from the Representations to generalized, overall "healthiness" is unsupported.  *See Davidson v. Sprout Foods Inc.*, No. 22-CV-01050-RS, 2022 WL 13801090 at *3 (N.D. Cal. Oct. 21, 2022) ("The California Court of Appeal has cautioned against permitting food labeling claims that rely on interferential leaps and which could ultimately 'place almost any advertisement truthfully touting a product's attributes at issue for litigation.'") (internal citations omitted); *Andrade-Heymsfield v. Danone US, Inc.*, 2019 WL 3817948, at *2, *9 (S.D. Cal. Aug. 14, 2019) ("[A]llegations of deception must be assessed according to what the advertisement or label depicts and actually says, and not allegations of implied meaning.")  In this case, "the

context in which Defendant's [Representations] are presented here make it implausible for a reasonable consumer to find that [the "good nutrition" and "goodness and nutrition" statements] [are] synonymous with 'healthy.'"  *Stewart v. Kodiak Cakes, LLC*, 568 F. Supp. 3d 1056, 1067 (S.D. Cal. 2021).  It is simply implausible that "a reasonable consumer who knows they are buying a sweet product, such as Diced Peaches in Strawberry Flavored Gel (¶ 27), and who reads a challenged statement like 'We believe in Sunshine for All™. It's our promise to provide everyone, everywhere with good nutrition!' immediately adjacent to the Nutrition Facts panel showing the amount of both naturally occurring and added sugar, would assume that the Product is generally healthy or would not increase the risk of any disease."  Reply at 16.

Other courts have reached similar conclusions analyzing similar – and even stronger (i.e. more directly health-related) – representations.  *See, e.g.*, *Lee v. Nature's Path Food, Inc.*, No. 23-CV-00751-H-MSB, 2023 WL 7434963 (S.D. Cal. Nov. 9, 2023) (rejecting as implausible the allegation that, even assuming labels explicitly communicated healthiness, they misleadingly touted the granola's healthiness); *Sanchez v. Nurture, Inc.*, *No.*,5:21-CV-08566-EJD, 2023 WL 6391487 (N.D. Cal. Sept. 29, 2023) (rejecting as implausible the allegation that representation "Here's to a happy and healthy start!" on baby food product misled consumers about presence of FA sugar); *Clark v. Perfect Bar, LLC*, No. C 18-06006 WHA, 2018 WL 7048788 (N.D. Cal. Dec. 21, 2018) (dismissing allegations that nut bar label referencing "health food" misled consumers about the bar's health benefits) , *aff'd*, 816 F. App'x 141 (9th Cir. 2020); *see also Truxel v. Gen. Mills Sales, Inc.*, No. C 16-04957 JSW, 2019 WL 3940956 (N.D. Cal. Aug. 13, 2019).

Finally, Plaintiffs' omission-based claims are nonstarters for the same reason: having concluded that the "good nutrition" and "goodness and nutrition" Representations do not imply a representation concerning the general healthiness of the Products, the Court finds that no additional, curative disclosure is required to address the adverse health effects of sugar.  The omission of such a disclosure is therefore not actionable.

Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' UCL, FAL, and CLRA claims.

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### D.    Additional Claims

#### i.    UCL Claim

Defendant moves to dismiss Plaintiffs' claims under the UCL's unlawful and unfair prongs to the extent they are premised on Defendant's alleged violation of the FDA's fortification policy at 21 C.F.R. § 104.20.  Mot. at 33.  Plaintiffs, in their Opposition, clarify that they limit their misbranding claim to Fruitify Beverages.  Opp. at 14 n.3.  But because Plaintiffs do not include any allegations in their Complaint concerning the purportedly improper fortification of Fruitify Beverages, the Court **GRANTS** Defendant's motion to dismiss this claim.

#### ii.    Express and Implied Warranty Claims

Defendant argues that Plaintiffs' fourth and fifth causes of action for breach of express and implied warranties under California law must be dismissed.  They contend that the claims are defective for numerous reasons, namely because (1) the Representations do not constitute a written warranty, (2) the Representations are true and not misleading, (3) the parties were not in privity, and (4) Plaintiffs have not pled that the Products were unfit to be consumed.  Mot. at 33.

Because the Court agrees that, at a minimum, Plaintiffs have not plausibly alleged that the Representations are false and misleading, the Court will **GRANT** Defendant's motion to dismiss these claims.

#### iii.    Negligent Misrepresentation

Defendant contends that to support a negligent misrepresentation claim in the commercial context, New York law requires that the parties have a "special relationship" – which they argue Plaintiffs did not plead existed.  Mot. at 33.  Regardless, given that another element of a negligent misrepresentation claim under New York law is that "the information [imparted from defendant to plaintiff] was incorrect," and given that the Court concluded that the information provided on Defendant's labels was *not* incorrectly false or misleading as alleged, Plaintiffs have not stated a claim for negligent misrepresentation.  *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 474 (E.D.N.Y. 2013) (internal quotation omitted).  Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' ninth cause of action arising under New York law.

//

United States District Court
Northern District of California

####     iv.     **Intentional Misrepresentation**

Intentional misrepresentation claims depend on a well-pled intent to defraud.  Plaintiffs'
allegations – that Defendant's fraudulent intent is "evidenced by the intentional and conspicuous
placement of the misleading representations on the Products' packaging," when it "knew that the
misrepresentations were misleading" – is insufficient under the Rule 9(b) standard.  *See, e.g.*,
*Tomek v. Apple, Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016) (affirming dismissal where plaintiff
did not allege "specific facts that 'allow[ ] the court to draw the reasonable inference' that Apple
knew it was issuing misleading advertisements" at the time of plaintiff's purchase).[9]  Accordingly,
the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' tenth cause of action.

####     v.     **Unjust Enrichment**

Defendant argues that Plaintiffs' unjust enrichment claims fail under both California and
New York law.  It suggests that Plaintiffs cannot bring these claims under California law because
"[t]here is no cause of action in California labeled 'unjust enrichment.'"  Mot. at 34 (quoting *Bank
of New York Mellon v. Citibank N.A.*, 8 Cal. App. 5th 935, 955 (2017)).  The same result is
warranted under New York law, they argue, because the cause of action for unjust enrichment is
impermissibly "duplicative" of Plaintiffs' other claims.  *Id.*

Because Plaintiffs did not counter Defendant's argument that the unjust enrichment claim
is "duplicative," and because the Court agrees that New York law does not permit such
duplication, it dismisses the claim.  *See Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185
(N.Y. 2012) (unjust enrichment may not "simply duplicate[]" a conventional tort claim).  As for
the unjust enrichment claim under California law, Defendant is correct that "there is not a
standalone cause of action for unjust enrichment" under California law.  *Astiana v. Hain Celestial
Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  But the inquiry does not, as it implies, stop there.
"When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-
contract claim seeking restitution."  *T.T. v. Supercell, Inc.*, 2023 WL 2562395, at *5 (N.D. Cal.
Mar. 17, 2023) (quoting *Astiana*, 783 F.3d at 762).  A plaintiff states a quasi-contact claim where

---

[9] As an unpublished Ninth Circuit decision, *Tomek v. Apple, Inc.* is not precedent, but may be
considered for its persuasive value.  *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

she alleges that "the defendant ha[s] 'enticed plaintiff[] to purchase [its] products through false and misleading labeling, and that [the defendant] was unjustly enriched as a result.'" *Id.* (quoting *Astiana*, 783 F.3d at 762). Though Plaintiffs argue that their allegations support a quasi-contract claim under this articulation, the Court found that Plaintiffs do not plausibly allege that the Representations on the Products were misleading. As a result, they do not state an actionable quasi-contract claim, and the Court must **GRANT** Defendant's motion to dismiss this claim.

## IV.    MOTION TO STAY

Defendant seeks to stay discovery until thirty days after the Court's ruling on the motion to dismiss. *See* Dkt. No. 36 at 6. The Federal Rules of Civil Procedure do not provide for an automatic stay of discovery simply because a potentially dispositive motion is pending. Nevertheless, a "district court has wide discretion in controlling discovery." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). And under Federal Rule of Civil Procedure 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Courts in this district often apply a two-prong test to determine whether a stay of discovery is appropriate. *See In re Nexus 6p Prod. Liab. Litig.*, No. 17-CV-02185-BLF, 2017 WL 3581188, at *1 (N.D. Cal. Aug. 18, 2017) (collecting cases). First, the moving party must demonstrate that the pending motion is "potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed." *Id.* Second, "the court must determine whether the pending motion can be decided absent discovery." *Id.*

Having found that the underlying motion to dismiss warrants dismissal of the complaint in its entirety, as Defendant urged, the Court believes "[i]t is sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). Accordingly, the Court finds that there is good cause under Rule 26(c) to temporarily stay discovery until otherwise ordered.

//

//

United States District Court
Northern District of California

V.    **CONCLUSION**

The Court **GRANTS IN PART and DENIES IN PART** Defendant's motion to dismiss. Dkt. No. 24.  The Court further **GRANTS** Defendant's motion to stay.  Dkt. No. 36.  Since the Court cannot conclude that amendment would be futile, Plaintiffs may file an amended complaint within 21 days of the date of this order.

The Court further **SETS** a telephonic case management conference on May 21, 2024, at 2:00 p.m. and **DIRCTS** the parties to submit a joint case management statement by May 14, 2024. All counsel shall use the following dial-in information to access the call:

Dial-In:  888-808-6929

Passcode:  6064255

All attorneys and pro se litigants appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the courtroom deputy.  For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.

**IT IS SO ORDERED.**

Dated:    4/8/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge